**Andrew F. EHAT, Plaintiff-Appellee,**

v.

**Jerald TANNER and Sandra Tanner, dba Modern Microfilm Company, Defendants-Appellants.**

No. 84–1787.

United States Court of Appeals, Tenth Circuit.

Dec. 30, 1985.

Rehearing Denied Feb. 10, 1986.

Brian M. Barnard, Salt Lake City, Utah, for defendants-appellants.

Gordon A. Madsen (Robert Cummings with him on the brief), Salt Lake City, Utah, for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, SEYMOUR, Circuit Judge, and BALDOCK, District Judge.*

* Honorable Bobby R. Baldock, United States District Judge for the District of New Mexico, sitting by designation.

SEYMOUR, Circuit Judge.

Andrew Ehat brought this action against Gerald and Sandra Tanner, dba Modern Microfilm Company (the Tanners), alleging injury from the Tanners' unauthorized reproduction and sale of literary material in which Ehat claimed a proprietary interest. Judgment was entered against the Tanners, and they appeal. We reverse.

Ehat was a scholar engaged in post-graduate research on the history of the Church of Jesus Christ of Latter-Days Saints (the LDS Church). The Tanners publish and distribute documents and works relevant to the LDS Church. In the course of his research, Ehat examined and took notes from a 350-page transcript of the William Clayton Journals at the LDS Church Archives.[1] Ehat gave to his colleague, Lyndon Cook, material consisting of quotations he and another researcher had taken from the Journals as well as his own notes and comments. This material was surreptitiously taken from Cook's office, copied, and replaced. One of these unauthorized copies found its way to the Tanners, who had no part in the original removal from Cook's office. They blacked out the material added by Ehat, printed the original extracts, and sold them to the public.

Ehat's complaint asserted claims under the federal copyright statutes, on which the judge granted summary judgment for the Tanners. In addition, the complaint alleged state common law claims for unfair competition and unjust enrichment.[2] Following a bench trial on these claims, the Court entered judgment for Ehat. On appeal, the Tanners assert that the district court erred in awarding damages on Ehat's common law claims because those claims are preempted by the federal copyright statutes.[3] We agree.

Federal copyright law was amended by the Copyright Act of 1976 to preempt state law as follows:

"On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."

17 U.S.C. § 301(a) (1982). Congress expressly stated that section 301 is intended to prevent "the States from protecting ... [a work] even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify, or because it has fallen into the public domain." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 131, *reprinted in* 1976 *U.S.Code Cong. & Ad.News* 5659, 5747. State law forbidding others to copy an article "unprotected by a patent or a copyright ... would interfere with the federal policy, found in Art. I, § 8, cl. 8, of the Constitution and in

---

1. William Clayton lived during the 1800's and was for a time the private secretary to Joseph Smith, the first president of the LDS Church. The Journals at issue were kept by Clayton from 1842 to 1846 while he and Joseph Smith lived in Nauvoo, Illinois.

2. In this regard, the complaint alleged as follows:
 "The unauthorized and infringing use therefore by the defendants of the copyrighted work, the publication of stolen or 'obtained without permission' notes that were unpublished in which the plaintiff owns the exclusive proprietary interest, and the unfair and illegal use of purloined work product and research intended by plaintiff to be published in his own right will cause, unless enjoined, irreparable harm, damage and injury to plaintiff, will constitute unfair competition and unjust enrichment of the defendants from the work product of the plaintiff and will rob the plaintiff of his proprietary interest in both published and unpublished materials vouchsafed to him by the statutes of the United States noted hereinabove."
 Rec., vol. I, at 5.

3. Ehat has not appealed the grant of summary judgment against him on his federal copyright claim.

the implementing federal statutes, of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain." *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 237, 84 S.Ct. 779, 782, 11 L.Ed.2d 669 (1964); *see also Suid v. Newsweek Magazine*, 503 F.Supp. 146, 148 (D.D.C.1980).

Under section 301, a state common law or statutory claim is preempted if: (1) the work is within the scope of the "subject matter of copyright" as specified in 17 U.S.C. §§ 102, 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106. *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 199–200 (2d Cir.1983), *rev'd on other grounds*, —— U.S. ——, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985); *Schuchart & Associates v. Solo Serve Corp.*, 540 F.Supp. 928, 942 (W.D.Tex.1982); 1 M. Nimmer, Nimmer on Copyright § 1.01[B], at 1–9 (1985).

■ Literary works, including compilations and derivative works, are within the subject matter of copyright if they are original works of authorship fixed in any tangible medium of expression. *See* 17 U.S.C. §§ 102, 103. This is so notwithstanding the material could not be copyrighted. *See Harper & Row*, 723 F.2d at 200. The material at issue here clearly falls within the subject matter of copyright. The district court did not address this issue, and Ehat does not argue otherwise on appeal.

We now turn to whether the rights Ehat seeks to assert under state common law are equivalent to those exclusive rights within the scope of copyright. Under federal law, the owner of copyright has the exclusive right "to reproduce the copyrighted work" and "to distribute copies" to the public by sale. *See* 17 U.S.C. §§ 106(1), (3).

> "When a right defined by state law may be abridged by an act which, in and of itself, would infringe one of the exclusive rights, the state law in question must be deemed preempted.... Conversely,

when a state law violation is predicated upon an act incorporating elements beyond mere reproduction or the like, the rights involved are not equivalent and preemption will not occur."

*Harper & Row*, 723 F.2d at 200 (citations omitted).

■ In an effort to distinguish this case from a preempted claim, the district court granted Ehat relief based on its finding that, by printing and selling Ehat's notes, the Tanners "bodily appropriated the work product of plaintiff" and derived a profit from their misappropriation. Rec., vol. V, at 13–14. We need not decide whether this misappropriation of material states a claim for relief under Utah law. Assuming that it does, *see generally International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918); Prosser & Keeton on Torts § 130 at 1020–22 (5th ed. 1984), we see no distinction between such a state right and those exclusive rights encompassed by the federal copyright laws. *See Warner Bros., Inc. v. American Broadcasting Co's.*, 720 F.2d 231, 247 (2d Cir.1983) ("state law claims that rely on the misappropriation branch of unfair competition are preempted"); *Schuchart & Associates*, 540 F.Supp. at 943–44 (same). *See generally* 1 Nimmer § 1.01[B], at 1–16 to 1–22. We cannot agree with the district court that Ehat's state claim was not within the scope of copyright because it was based on his right in the notes "as a physical matter and property." Rec., vol. V, at 9. Ehat did not allege a state law claim of conversion to recover for the physical deprivation of his notes. Instead, he sought to recover for damage flowing from their reproduction and distribution. *See Harper & Row*, 723 F.2d at 200–01. Such reproduction interferes with an intangible literary or artistic property right equivalent to copyright. *See* 1 Nimmer § 1.01[B], at 1–14.4 n. 51.

■ Our view of the nature of Ehat's claim is confirmed by the district court's award of damages. The court awarded $960, representing the Tanners' profits from the printing and sale of their publica-

tion, which is clearly an award for the reproduction of Ehat's work. The court also awarded $3,000 which it found Ehat suffered as a reduction in the market value of his master's thesis due to the misappropriation. This damage also flows from the reproduction of the material rather than from its physical taking. *See Harper & Row,* 723 F.2d at 201. Finally, the court awarded Ehat $12,000 for general damage to his reputation as a scholar resulting from "defendant's unlawful and improper publication." Rec., vol. V, at 15. Because the reputation injury arose out of the copying of Ehat's work, that claim is preempted as well. *See* 1 Nimmer § 1.01[B], at 1.14.2 n. 49.

The judgment entered by the district court conclusively establishes the nature of Ehat's claim as equivalent to one within the scope of the federal copyright. The court thus stated:

"IT IS NOW HEREBY ORDERED, ADJUDGED AND DECREED:

1. *That defendants' publication* as such of a facsimile of the 'Ehat notes' as referred to in the findings herein *was* and is unlawful and *a violation of plaintiff's rights* thereto.

2. *That by reason of said publication* the plaintiff is hereby granted judgment against the defendants for the sum of $15,960, with interest from date of judgment at the rate provided by law."

Rec., vol. I, at 196 (emphasis added).

 Ehat "cannot achieve by an unfair competition claim what [he] failed to achieve under [his] copyright claim." *See Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905, 918 (2d Cir.1980).[4]

"The intention of section 301 is to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works coming within the scope of

the Federal copyright law. The declaration of this principle in section 301 is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas between State and Federal Protection."

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 130, *reprinted in* 1976 *U.S.Code Cong. & Ad News,* 5659, 5746.

Accordingly, Ehat's state law claim is preempted. The case is reversed and remanded for further proceedings consistent with this opinion.

---

4. Ehat's reliance on *Roy Export Co. v. Columbia Broadcasting Sys.,* 672 F.2d 1095 (2d Cir.1982), is misplaced because that case was decided under the prior copyright law. *Roy Export* involved film clips protected by federal copyright and a compilation that included the clips which was protected by state common law copyright

because it was unpublished. Under the old copyright law, state claims for misappropriation based on works protected by state common law were not preempted. *Id.* at 1106. That basis for allowing a misappropriation claim to go forward is not available under the new act, and the case is therefore inapposite.