Fremont-Smith, J.
This case was tried jury-waived on April 5, 1994. Based upon all of the credible testimony and other evidence, the Court makes the following findings of fact, conclusions of law and judgment.
In May 1989, Domenic Sicari, an architectural designer (but not an architect) doing business as Domenic Sicari Associates, contracted with Sebastian Piazza to prepare architectural plans to be used by Sebastian Piazza for the construction of his home at Michael Drive, Danvers, Massachusetts. Pursuant to the written contract, Domenic Sicari was to receive and did receive from Piazza $7,500 for his services.
Although Piazza considered himself to be the owner of the plans, there were no discussions between Piazza and Sicari regarding Sicari’s ability to reuse the plans *110 for the construction of another home, and Sicari manifested an intention to retain an ownership interest in the plans by stamping each page of the plans with his logo containing his name and address, and, on page six of the plans, under the heading “General Notes,” placing the following language in capital letters: “REPRODUCTION OF ALL OR ANY PART OF THIS DRAWING IS STRICTLY PROHIBITED.” A further manifestation of Sicari’s intention to retain an ownership interest in the plans was the fact that he retained and continues to possess the mylar to the plans. Therefore, I find that Sicari retained a proprietary interest in the plans.
Valuation of Sicari’s retained interest in the plans is difficult. While Sicari testified that his hourly rate was $65/hr and that he had spent around 300 hours on the plans (which would equal $19,500) he had agreed to a payment of $7,500 for them, and agreed at trial that plans were not generally sold on a time-charge basis. Daveta testified that he would have charged Raccuia $8,000 for similar plans. Daveta, however, was an architect, which Sicari was not. I find that the fair market value of Sicari’s remaining propri-etaiy interest in the plans was $3,000.
Sebastian Piazza provided Philip Raccuia with certain pages of the plans for the purpose of having Raccuia submit a bid on the plumbing contract for the construction of Mr. Piazza’s home. At some later date, from a source which Raccuia testified he was unable to recall, Raccuia obtained possession of a complete set of the Sicari architectural plans which still contained Sicari’s logo and his legend restricting the reproduction of the plans. He then inquired as to what Daveta would charge for a comparable set of plans. Daveta told him that he would charge $8,000 for an entirely new set of plans, or $2,500 to add additional detail to the Sicari plans. Raccuia responded that he did not wish to spend that sort of money and requested that Daveta reproduce the plans in blueprint form and replace the Sicari legend on the plans with Domenic Daveta’s legend so that he could submit them to the Town of Saugus for purposes of obtaining a building permit.[3] Daveta agreed to do this for $300, and the plans were thus palmed off on the town as those of Daveta. No one sought permission from Sicari or Piazza to proceed in this manner, but Daveta was led to understand by Raccuia that Piazza had given permission for this. No such permission, however, had then been obtained from Piazza or Sicari.
As a result, Philip Raccuia submitted the altered plans to the Town of Saugus Building Department and was able to obtain a building permit. He then provided Sicari’s plans (once more palmed off as Daveta’s plans) to his builder who proceeded to utilize them for the construction of Raccuia’s home.
Although some alterations from the plans were made during building, Raccuia’s home as built was substantially similar in architectural design, layout and appearance to Piazza’s, and Raccuia obviously reaped the benefits of Sicari’s misappropriated plans, at little or no cost to himself.
RULINGS OF LAW
Congress has abolished all common law actions which are equivalent to the rights afforded under 17 U.S.C.A. §106, the Copyright Act of 1976. Section 301(a) provides that:
after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106 in works of authority that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by Sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statute of any State.
17 U.S.C.A. §301. The intention of this section was to:
preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works coming within the scope of the Federal Copyright law. The declaration of this principle in Section 301 is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas between State and Federal protection. Regardless of when the work was created and whether it is published or unpublished, disseminated or undisseminated, in the public domain or copyrighted under the Federal Statute, the States cannot offer it protection equivalent to copyright.
H. Report No. 1476, reprinted at 17 U.S.C.A. §301.
Accordingly, state claims are preempted if two conditions are met: “(1) the work is within the scope of the ‘subject matter of copyright’ as specified in 17 U.S.C. §102, 103; and (2) the rights granted under the state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106.” Ehat v. Tanner, 780 F.2d 876, 878 (10 Cir. 1986), cert. denied, 479 U.S. 820 (1986).
Architectural plans constitute a “pictorial [or] graphic” work within the meaning of 17 U.S.C.A. §102(a)(5). Gemcraft Homes, Inc. v. Sumurdy, 688 F.Supp. 289, 294 (E.D. Tex 1988). Thus, the first condition is met.
As to whether the state-created rights alleged to have been violated here are “equivalent” to the exclusive rights created by the Copyright Act, “[t]he crux of the inquiry is whether the claimed state-created right *111 is qualitatively similar enough to the right protected by federal law to be termed ‘equivalent’ to, and thus preempted by, the federal law.” Data General Corp. v. Grumman Systems Support Corp., 795 F.Supp. 501, 505 (D.Mass. 1992). “The State claim must have an ‘extra element’ which changes the nature of the action.” Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987).
A.Common Law Copyright Claims
In Counts I and II of his complaint, Sicari alleges that the defendants violated his common law copyright by reproducing his unpublished plans and constructing the house in substantial conformity thereto. These common law claims, discussed extensively in Edgar H. Wood Associates, Inc. v. Skene, 347 Mass. 351 (1964), have clearly been preempted by the 1976 Copyright Act. See H. Report 1476, reprinted at 17 U.S.C.A. §301.
B.Fraudulent Misappropriation
In Count II of the complaint, Sicari asserts that Raccuia fraudulently secured a copy of his plans and misappropriated them for his own use.
Misappropriation has been defined as “ 1 (a): to apply to illegal purposes . . . b: to appropriate dishonestly for one’s own use: embezzle ... 2: to appropriate wrongly or misapply in use ...” Arruda v. Contributory Retirement Appeal Board, 28 Mass.App.Ct. 366, 368 (1990), quoting Webster’s Third New International Dictionary 1442 (1971). Raccuia’s claim for fraudulent misappropriation, however, is also preempted by the 1976 Copyright Act.
“Misappropriation” is not necessarily synonymous with copyright infringement, and thus a cause of action labeled as “misappropriation” is not preempted if it is fact based neither on a right within the general scope of copyright as specified by Section 106 nor on the right equivalent thereto. For example, state law should have the flexibility to afford a remedy (under traditional principles of equity) against a consistent pattern of unauthorized appropriation by a competitor of the facts (i.e., not the literary expression) constituting “hot” news . . . The evolving common law rights of “privacy,” “publicity,” and “trade secrets,” and the general laws of defamation and fraud, would remain unaffected as long as the causes of action contained elements, such as invasion of personal rights or breach of trust or confidentiality, that are different in kind from copyright infringement.
H. Rep. No. 1476, reprinted at 17 U.S.C.A. §301.
Sicari’s misappropriation claim fails squarely within the scope of copyright: the exclusive right to reproduce one’s own work. 17 U.S.C.A. §106(1). The added assertion that the defendants acted fraudulently in copying and substituting their names does not add the necessary “extra element” needed to take the claim out of the exclusive realm of the Federal Copyright Act. See generally Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987) (misappropriation of material gained during existence of joint venture is equivalent to copyright claim); Ehat v. Tanner, 780 F.2d 876, 878 (10th Cir. 1986) (action for “bodily appropriation] of work product” preempted); Kakizaki v. Riedel, 811 F.Supp. 129, 133 (S.D.N.Y. 1992) (common law tort claims which flow from unauthorized use of material are preempted); Mayer v. Josiah Wedgwood & Sons, Ltd., 601 F.Supp. 1523, 1535 (S.D.N.Y. 1985) (“commercial immorality” does not add an extra element to a misappropriation claim); P.I.T.S. Films v. Laconis, 588 F.Supp. 1383, 1386 (E.D. Mich. 1984) (no added elements such as invasion of a personal right or breach of fiduciary duty differentiate the misappropriation claim from copyright infringement).
C. Conversion
In Counts IV and V of the complaint Sicari alleges that the defendants converted to their own use the property of Sicari.
As stated in Data General Corp., supra at 505:
Under Massachusetts law, conversion is established by providing “the exercise of dominion or control over the person property of another.” Third Nat. Bank v. Continental Ins. Co., 388 Mass. 240, 244, 446 N.E.2d 380 (1983). The tort involves the wrongful taking or possession of the physical property of another. See Restatement of Torts (Second) §222A, Illustrations 2, 8.
The Court concluded that:
[S]uch a claim is not preempted by copyright law. See Oddo v. Ries, 743 F.2d 630, 635 (9th Cir. 1984).
Accordingly, since I find that Raccuia wrongfully took possession and control of plans in which the plaintiff had continued to retain an ownership interest, and converted the plans to his own use, which claim is not preempted by federal law I find in favor of the plaintiff against Raccuia on those counts. As I find that Daveta was told by Raccuia that he had permission to use the plans, however, I find in favor of Daveta on those counts.
D. c. 93A. §11
The plaintiff asserts in Counts VI and VII of the complaint that the reproduction and use of Sicari’s plans constituted an unfair and deceptive act in violation of c. 93A, §11. To the extent that the plaintiff is claiming damages arising solely from common law copyright or misappropriation, these claims are preempted and cannot constitute an element of a c. 93A violation. While it is a close case, I rule that defendants’ conversion does not, in and of itself, rise to the level of a knowing and willful violation of c. 93A which would justify multiple damages. The conversion and palming off, however, do constitute “an unfair and deceptive trade practice,” for which I award attorneys *112 fees and costs against Raccuia in the additional sum of $1,500.
JUDGMENT
For the foregoing reasons, it is ORDERED that judgment shall enter for the defendants on all counts except Counts IV and V. On Counts IV and V, judgment is hereby entered against Raccuia in the total sum of $4,500 (consisting of $3,000 for the fair market value of plaintiffs ownership interest in the plans and for the unjust enrichment resulting to Raccuia from the conversion, plus attorneys fees and costs in the sum of $1,500).

 Many building inspectors do not issue building permits unless the submitted plans are drawn by a registered architect, which Daveta was, but Sicari was not.