KINDERGARTNERS COUNT, INC.,
Plaintiff/Counterclaim
Defendant,

v.

Donald F. DEMOULIN,
Defendant/Counterclaim Plaintiff,

and

Telephone Pioneers of America,
and Pioneer Foundations,
Defendants,

v.

Vernie L. Wheeler, Counterclaim
Defendant.

Kindergartners Count, Inc., Plaintiff,

v.

Donald F. Demoulin and Telephone
Pioneers of America,
Defendants.

Nos. 00–4173–SAC, 01–4017–RDR.

United States District Court,
D. Kansas.

Sept. 13, 2001.

Terry E. Beck, Topeka, KS, pro se.

Craig C. Blumreich, Gehrt & Roberts, Chartered, Topeka, KS, pro se.

Brian G. Boos, Gehrt & Roberts, Chartered, Topeka, KS, pro se.

Kevin James Grauberger, Thomas E. Wright, Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, Topeka, KS, for Defendant.

Todd E. Hilton, John M.McFarland, throp & Gage, L.C., Kansas City, MO, for Defendant.

Thomas K. McQueen, Molly J. Moran, Jenner & Block, Chicago, IL, for Defendant.

Vernie L. Wheeler, Topeka, KS, pro se.

Harold S. Youngentob, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Plaintiff.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This case comes before the court on the defendant Donald F. DeMoulin's Motion to Dismiss Counts I, III, VI and IX of the Plaintiff's Second Amended Complaint, (Dk.41), and the defendant Telephone Pioneers of America's Motion to Dismiss Counts I, III, and X. (Dk.61).

The plaintiff opposes both motions.

## FACTUAL BACKGROUND

The following is taken from the plaintiff's second amended complaint. The plaintiff, Kindergartners Count, Inc. ("KCI"), is the copyright owner of the work, "I LIKE ME!," a personalized children's book. KCI publishes this work with an accompanying program originally geared for children from kindergarten through second grade and recently expanded to include pre-school children. The program is designed for the development of character, self-confidence and reading skills and provides activities that promote sharing, responsibility, counting, learning, listening, helping and good eating habits. The book distributed as part of the program is personalized over 60 times with the name of the child or the names of the child's friends, teacher, principal, school, hometown, and state. The program also includes a teacher's guide with recommended daily lesson plans and activities.

The suit arises from a business relationship between KCI and Telephone Pioneers of America ("TPA") and a consulting contract between KCI and Donald F. DeMoulin ("DeMoulin"). As alleged in the plaintiff's second amended complaint, KCI affiliated in 1998 with TPA to sponsor and coordinate the distribution of the "I LIKE ME" program. In late 1998, TPA representatives discussed the purchase of the program from KCI and made an offer in the spring of 1999 that KCI declined. In the summer of 1999, the partnership dissolved and was replaced with agreements that generally required, *inter alia,* KCI to use TPA's mechanized ordering system and TPA's logo on published copies of "I LIKE ME." In March of 2000, TPA notified KCI that the agreements would not be renewed as TPA had developed their own personalized reader book, "A Book About Me," ("ABAM"), and that KCI would need to locate its own internet ordering system.

KCI entered into a one-year consulting agreement with DeMoulin in October of 1997 that gave KCI all rights and interests in matters relating to any part of the program developed by DeMoulin. Pursuant to this contract, DeMoulin developed the teacher's guide to the program on which KCI subsequently registered a copyright. As a consultant with KCI, DeMoulin had regular and frequent contact with TPA. A second consulting agreement was signed in April of 1999, with DeMoulin working on another revision to the teacher's guide. After a planning retreat in April of 1999 attended by Jack Sawka of TPA and DeMoulin on behalf of KCI, Sawka sent a letter stating TPA's intent to dissolve the partnership and both Sawka and DeMoulin resigned from the I LIKE ME! advisory board. In June of 1999, DeMoulin advised KCI of his intent to terminate the consulting agreement except for certain compensation provisions, but in July he withdrew his request to terminate. On information and belief, KCI alleges that DeMoulin was involved in the authorship and/or development of TPA's ABAM program with supporting materials.

KCI alleges TPA's personalized reader book and program, ABAM, "duplicates the fundamental essence or structure and is a

derivative work of KCI's" own personalized reader book and program, "I LIKE ME!" (Dk.40, ¶ 39). The complaint alleges what are believed to be numerous similarities in content and to be copying of protectable elements of KCI's works. The complaint further alleges that both DeMoulin and TPA, by reason of their relationships and roles, had access and exposure to KCI's confidential information and trade secrets.

The second amended complaint alleges five counts against DeMoulin, and the following four are the subject of his motion to dismiss: Count I: Copyright Infringement; Count III: Unfair Competition; Count VI: Conversion; and Count IX: Intentional Interference with Business Relations. The complaint alleges seven counts against TPA, and the following three are the subject of its motion to dismiss: Count I: Copyright Infringement; Count III: Unfair Competition; and Count X: Misrepresentation.[1]

## RULE 12(B)(6) STANDARDS

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635,

638 (6th Cir.1993); *see Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma, Inc.*, 944 F.2d 752, 753 (10th Cir. 1991) ("Dismissal of a case pursuant to Fed.R.Civ.P. 12(b)(6) requires the legal determination that the plaintiff can prove no set of facts in support of his claim to entitle him to relief.") (citations omitted)). All well-pleaded factual allegations in the complaint must be accepted as true, *see Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 870 (10th Cir.1992), and viewed in the light most favorable to the nonmoving party. *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472 (10th Cir.1990) ("Under Rule 12(b)(6), dismissal is inappropriate unless plaintiff can prove no set of facts in support of his claim to entitle him to relief."). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (footnote omitted).

Although plaintiff need not precisely state each element of its claims, it must plead minimal factual allegations on those material elements that must be proved. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). Put another way, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir.1997) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988)), *cert. denied*, 523 U.S. 1023 (1997). "'It is

---

1. Since the filing of the motions to dismiss, the plaintiff has received leave to file and has filed a third amended complaint adding the defendant Pioneers Foundation ("Pioneers"). The complaint alleges that Pioneers is the alter ego of TPA and acted in tandem and in concert with TPA in carrying out TPA's contractual responsibilities to KCI. Consequently, the third amended complaint names Pioneers as a defendant to the same seven counts alleged against TPA.

true that the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts upon which a claim is based. Nevertheless, a plaintiff must allege sufficient facts to outline a cause of action, proof of which is essential to recovery.'" *Stevens v. Umsted,* 131 F.3d 697, 700 (7th Cir.1997) (quoting *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986)).

## ARGUMENTS AND ANALYSIS

*Count One: Copyright Infringement*

■ Both moving defendants contend count one fails as a matter of law, because the complaint does not allege that KCI's "I LIKE ME" book is original to the author and, thus, protectable under copyright laws. The defendants maintain the complaint must allege specifically the constituent elements of the book that are protectable as original to the author and that were copied by the defendants. It is not enough, according to the defendants, for the complaint to allege that the plaintiff owns the copyright in the book and that the defendants infringed the copyright by developing another book.

■■ To prevail on its copyright claim, the plaintiff "must establish both: (1) that it possesses a valid copyright and (2) that Defendants 'copied' protectable elements of the copyrighted work." *Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1284 (10th Cir.1996) (citations and footnote omitted). Copyright protection extends only to original works. *See* 17 U.S.C. § 102(a); *Feist Pubs., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) ("To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some

minimal degree of creativity." (citation omitted)).

■ Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This pleading standard is constant from case to case, but "what constitutes sufficient notice to enable a defendant to formulate a responsive pleading does change from case to case." *Mountain View Pharmacy v. Abbott Laboratories,* 630 F.2d 1383, 1386–87 (10th Cir. 1980).

"Complaints [for copyright infringement] simply alleging present ownership by plaintiff, registration in compliance with the applicable statute, and infringement by defendant, have been held sufficient under the rules." 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1237, p. 283 (1990); *see, e.g., Mid America Title Co. v. Kirk,* 991 F.2d 417, 421 (7th Cir.), *cert. denied,* 510 U.S. 932, 114 S.Ct. 346, 126 L.Ed.2d 310 (1993); *Carell v. Shubert Organization, Inc.,* 104 F.Supp.2d 236, 250 (S.D.N.Y.2000); *Piaggio & S.S.p.A. v. Scooterworks USA, Inc.,* 1999 WL 674749, at *4 N.D. Ill. Aug. 23, 1999); *Jetform Corp. v. Unisys Corp.,* 11 F.Supp.2d 788, 790 (E.D.Va.1998). The Seventh Circuit in *Mid America* rejected a reading of *Feist* that would "require additional detail at the pleading stage" as to the element of originality. 991 F.2d at 422. The circuit court observed that originality is not often an issue to be determined on the pleadings, that *Feist* was decided on a summary judgment record, and that the parties had gone beyond the complaint in challenging originality. *Id.* This approach, while distinguishable from

that used by the Tenth Circuit in *Fisher v. United Feature Syndicate, Inc.*, 203 F.3d 834, 2000 WL 135167 (10th Cir. Feb. 7, 2000), *cert. denied*, 531 U.S. 992, 121 S.Ct. 483, 148 L.Ed.2d 456 (2000),[2] is certainly the one most consistent with Rule 8(a) and its liberal pleading policy.

The plaintiff's second amended complaint alleges ownership of the copyright, proper registration of the copyright, and the defendants' infringement of the copyright. It states sufficient facts as to provide defendants with fair notice of the copyright claim and as to enable them to draft a responsive pleading. "Other details of plaintiff's copyright claim may be obtained by discovery." *Piaggio*, 1999 WL 674749, at *4 (quotation omitted). For that matter, any issues over originality are more suited to a summary judgment motion after the completion of relevant discovery. The court is satisfied that the plaintiff has pleaded a set of facts upon which the plaintiff may be entitled to relief for copyright infringement.

### Count III: Unfair Competition

Citing *Ehat v. Tanner*, 780 F.2d 876 (10th Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 86, 93 L.Ed.2d 39 (1986), the defendants argue the plaintiff's state-law unfair competition claim is premised on nothing more than allegations of unlawful taking and distribution of the same materials underlying the copyright claim. The defendants ask the court to dismiss this claim as being preempted by the copyright statute. The plaintiff refutes this description of its unfair competition claim saying it is directed both at the defendants' use of information and knowledge obtained during the course of a confidential relationship and at the defendants' use of ABAM to confuse and deceive customers into believing they were purchasing the plaintiff's product.

▪▪▪ Section 301 of the Copyright Act preempts enforcement of any state common law or statutory claim if: " '(1) the work is within the scope of the subject matter o copyright as specified in 17 U.S.C. §§ 102 and 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106.' " *Harolds Stores, Inc. v. Dillard Department Stores*, 82 F.3d 1533, 1542–43 (10th Cir.1996) (quoting *Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d 823, 847 (10th Cir.1993)), *cert. denied*, 519 U.S. 928, 117 S.Ct. 297 (1996). As set out in § 106, a copyright owner's exclusive rights are to: (1) reproduce the copyrighted work, (2) prepare derivative works; (3) distribute copies, (4) perform the work publicly, and (5) display the work publicly. *See Gates Rubber Co.*, 9 F.3d at 847. "[I]f a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action." *Id.* (citation omitted).

---

**2.** The court realizes that the Tenth Circuit in *Fisher* undertook a rather detailed factual examination of the copyright claims alleged there. The court does not believe *Fisher* should be read as using *Feist* to impose additional pleading requirements. Considering the rather unique complaint and allegations in *Fisher*, specifically a *pro se* complaint that the circuit panel described as "mostly unintelligible" and as consisting of 128 pages, 300 paragraphs, and 43 claims against 41 defendants seeking over $3 billion in damages, the court believes the more aggressive approach taken in *Fisher* is not typical of that taken by the courts in applying Rule 8 pleading requirements to a copyright infringement claim. Consequently, the court doubts that *Fisher* as an unpublished decision carries much persuasive value on that issue.

In deciding the preemption issue, courts must analyze the theory of unfair competition being asserted for whether it contains a qualitatively different extra element that distinguishes it from a copyright claim. *Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc.*, 7 F.3d 1434, 1440 (9th Cir.1993). "[E]lements such as awareness, intent, or commercial immorality" are not qualitatively different so as to prevent preemption. *Rubin v. Brooks/ Cole Pub. Co.*, 836 F.Supp. 909, 923 (D.Mass.1993) (citations omitted). "[A] Court must look beyond the 'label affixed' to the cause of action, and must determine 'what plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'" *Id.* (quoting *Patricia Kennedy & Co., Inc. v. Zam–Cul Enterprises, Inc.*, 830 F.Supp. 53, 56 (D.Mass.1993)).

The Tenth Circuit in *Ehat* recognized federal copyright preemption over a state law claim for unfair competition that was based on misappropriation of literary notes in which the alleged damages flowed from the reproduction and distribution of the notes. 780 F.2d at 878. "[I]if B is selling B's products and representing to the public that they are B's products, a[n unfair competition] claim by A that B's products replicate A's is a disguised copyright infringement claim and is preempted." *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir.1998) (citing 1 *Nimmer on Copyrights*, § 1.01[B][1][e] at 1–24, n. 110). "While 'state law claims that rely on the misappropriation branch of unfair competition are preempted,' ..., claims that allege a false designation of origin via 'passing off' 'are not asserting rights equivalent to those protected by copyright and therefore do not encounter preemp-

tion.'" *Scholastic, Inc. v. Stouffer*, 124 F.Supp.2d 836, 847 (S.D.N.Y.2000) (quoting *Warner Bros. Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 247 (2nd Cir.1983) (citing in turn 1 *Nimmer on Copyright* §§ 1.01[B][1] n. 47, 2.12 n. 25 (1983))) (citing *Weber v. Geffen Records, Inc.*, 63 F.Supp.2d 458, 464 (S.D.N.Y.1999), and H.R.Rep. No. 1476, 94th Cong., 2d Sess. 132 (1976), U.S. Code Cong. & Admin. News at 5659, 5748 ("Section 301 is not intended to preempt common law protection in cases involving activities such as false labeling, fraudulent representation, and passing off even where the subject matter involved comes within the scope of the copyright statute.")). Examples of extra elements in unfair competition claims that avoid preemption include: breach of fiduciary duty, breach of a confidential relationship, and palming off the defendant's products as those of the plaintiff's. *Summit Mach. Tool Mfg.*, 7 F.3d at 1441; *see also Kregos v. Associated Press*, 3 F.3d 656, 666 (2nd Cir.1993) (breaches of confidential relationships, breaches of fiduciary duties and trade secrets), *cert. denied*, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994); *Kane v. Nace Intern.*, 117 F.Supp.2d 592, 597–98 (S.D.Tex.2000) (breach of confidence, breach of trust, and trade secret misappropriation) *Rubin*, 836 F.Supp. at 923 (likelihood of consumer confusion, misrepresentation, or deception); *cf. Gates Rubber Co.*, 9 F.3d at 847 ("breach of a duty of trust or confidence" is an extra element present in a trade secret cause of action).

The defendants argue that KCI, like the plaintiff in *Ehat*, is alleging the infringement of its rights of reproduction and distribution and seeking recovery for the same.[3] The court agrees with the defendants that to the extent that Count III incorporates all prior allegations of the

---

**3.** In his reply brief, the defendant DeMoulin concedes the plaintiff has pled an extra element and withdraws count III from his motion to dismiss. (Dk.48, p. 4).

plaintiff's second amended complaint, including Count I, and could be interpreted as asserting a simple misappropriation theory of unfair competition, such a claim would be preempted by federal copyright law. Count III, however, directly alleges that DeMoulin and TPA obtained confidential and proprietary information through their respective confidential relationships to KCI and used that protected information in developing the ABAM program. Proof of a confidential relationship and its breach are extra elements that distinguish this unfair competition claim from the copyright infringement claim. *See Data General Corporation v. Grumman Systems Support Corporation*, 36 F.3d 1147, 1165 (1st Cir.1994); *Gates Rubber Co.*, 9 F.3d at 847. For that matter, Count III also appears to assert a claim in the nature of palming off, that is, the defendant's "use of the ABAM program has caused ... confusion, mistake and deception, and infringes on the goodwill of KCI with its customers." (Dk.40, ¶ 75). Proof of customer confusion or deception and/or proof of a confidential relationship and the breach thereof are extra elements that keep this unfair competition claim from being preempted.

### Count VI: Conversion

The defendant DeMoulin construes this claim as asserting that he obtained proceeds and profits from the wrongful use of the plaintiff's intellectual property and that he has converted those proceeds and profits by not turning them over to KCI as it has demanded. DeMoulin argues that this claim fails because conversion is not a viable theory for the recovery of a mere debt or account. He further argues that a claim for conversion of intellectual property is preempted by federal copyright law.

Count VI alleges that DeMoulin converted proceeds belonging to KCI by reason of its copyright ownership in the ABAM program and the I LIKE ME! program. It further alleges that DeMoulin converted intellectual property to his own use by failing to assign to KCI all rights and proceeds from the ABAM program. Under Kansas law, conversion is defined "as the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights." *Moore v. State Bank of Burden*, 240 Kan. 382, 386, 729 P.2d 1205 (1986), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987). "[T]he measure of damages for conversion of personal property is the fair and reasonable market value of the property converted at the time of the conversion." *Nelson v. Hy–Grade Construction & Materials, Inc.*, 215 Kan. 631, 635, 527 P.2d 1059 (1974). Kansas does not recognize an action for conversion for the recovery of an ordinary debt or account. *Temmen v. Kent–Brown Chev. Co.*, 227 Kan. 45, Syl. ¶ 3, 605 P.2d 95 (1980).

A claim for conversion of physical property avoids preemption when it goes beyond unauthorized copying and involves proof that the defendant wrongfully obtained or retained possession over a specific piece of tangible property. *United States ex rel. Berge v. Trustees of Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir.), *cert. denied*, 522 U.S. 916, 118 S.Ct. 301, 139 L.Ed.2d 232 (1997); *Malik v. Lynk, Inc.*, No. 99–2015–KHV, 1999 WL 760217, at *3 (D.Kan. Aug. 18, 1999). "However, § 301(a) will preempt a conversion claim 'where the plaintiff alleges only the unlawful retention of its intellectual property rights and not the unlawful retention of the tangible object embodying its work.'" *Berge*, 104 F.3d at 1463 (quoting Paul Goldstein, *Copyright, Patent, Trademark and Related State Doctrines* 777 (3d ed.1993)). Consequently, if a conversion

claim involves tangible property and seeks its recovery then the claim avoids preemption, but if the plaintiff is only seeking damages from the defendant's reproduction of a work—and not the actual return of a physical piece of property—the claim is preempted. *Berge,* 104 F.3d at 1463; *see Ehat,* 780 F.2d at 878 (preemption of state law claim required when plaintiff does not seek to recover for physical deprivation of tangible property but for the damages flowing from their reproduction and distribution); *Malik,* 1999 WL 760217, at *3 (conversion claim based on the defendant's use of the plaintiff's idea and not the taking of the plaintiff's design and production sample was preempted); *Worth v. Universal Pictures, Inc.,* 5 F.Supp.2d 816, 822–23 (C.D.Cal.1997) (the conversion claim was preempted because plaintiff did not seek return of actual physical works but rather sought recovery of profits obtained from unauthorized reproduction); *Dielsi v. Falk,* 916 F.Supp. 985, 992 (C.D.Cal.1996) (a claim for conversion of intangible property arising from the reproduction of the property "is clearly equivalent to a copyright claim").

The plaintiff claims that DeMoulin converted the intellectual property not any tangible property. Indeed, the plaintiff is not seeking the return of a tangible piece of property embodying or representing its copyrighted work. Rather than the return of any actual physical work, the plaintiff wants to recover the defendant's profits from his unauthorized reproduction and distribution of its intellectual property. The plaintiff's conversion claim lacks any extra element qualitatively different from those necessary to prove copyright infringement. Consequently, the plaintiff's conversion claim is equivalent to its copyright infringement claim and subject to the preemption statute.

 Without citing any authority, the plaintiff alternatively contends its conversion claim "must be allowed to stand on its own" if it is later established that the defendant did not copy any protectable elements of KCI's copyrighted work. In effect, the plaintiff is arguing that while its work plainly falls within the general subject matter of copyright it may bring a conversion claim for the defendant's use of any elements not protected by copyright law. The circuit courts addressing this issue have rejected the alternative argument advanced by the plaintiff:

> The Second, Fourth, and Seventh Circuits have held that the scope of the Copyright Act's subject matter extends beyond the tangible expressions that can be protected under the Act to elements of expression which themselves cannot be protected. *See, e.g., National Basketball Ass'n [v. Motorola, Inc.],* 105 F.3d [841] at 849–50 [ (2nd Cir.1997) ] (holding that subject matter of copyright under § 301 includes "uncopyrightable" as well as "copyrightable" elements;) *Berge,* 104 F.3d at 1463 (finding that "scope and protection are not synonyms," and holding that uncopyrightable ideas that make up copyrightable works are within subject matter of copyright); *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1453 (7th Cir.1996) (finding that uncopyrightable data underlying a copyrightable computer program are within subject matter of copyright).

> . . . .

> We join our sister circuits in holding that the scope of the Copyright Act's subject matter is broader than the scope of the Act's protection.... As the Seventh Circuit has noted, "[o]ne function of § 301(a) is to prevent states from giving special protection to works of authorship that Congress has decided should be in the public domain, which it can accomplish only if 'subject matter of copyright' includes all works of a type covered by sections 102 and 103, even if federal law does not afford protection to them." *Zeidenberg,* 86 F.3d at 1453. Thus, we

conclude that the district court did not err with respect to the subject matter prong of its preemption analysis. *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455 (6th Cir.2001). Persuaded by this approach taken by the circuit courts, the court concludes that the subject matter prong of the preemption analysis is satisfied here and grants the defendant De-Moulin's motion to dismiss count VI on preemption grounds.

### Count IX: Intentional Interference with Business Relations

■■■ Citing the well-established rule that the alleged interferer cannot be a party to the contract, the defendant De-Moulin moves to dismiss himself from count IX. The plaintiff clarifies that count IX is not intended to assert any claim against DeMoulin. With this clarification that will govern the scope of count IX, the court denies the defendant's motion as moot.

### Count X: Misrepresentation Against TPA

■■■ TPA contends that count X fails to plead fraud with the requisite particularity under Fed.R.Civ.P. 9(b). TPA attacks this count as not pointing to the particular misrepresentations nor setting forth the when, where, what, how and to whom the misrepresentations were made and the content of the same.

■■■ Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This heightened pleading requirement serves to provide defendants adequate notice of the plaintiff's claim, to protect defendants from reputational damage caused by "improvident charges of wrongdoing," and to "inhibit the institution of strike suits." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir.1992) (quota-tion omitted). This does not mean that Rule 8's principle of "simple, concise and direct" pleadings is to be ignored. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.1997). But it does mean that to survive a motion to dismiss, an allegation of fraud must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* (citing *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir.1991)). Put another way, the plaintiff must set out the "who, what, where, and when" of the alleged fraud. *See Phillips USA, Inc. v. Allflex USA, Inc.*, 1993 WL 191615 (D.Kan. May 21, 1993); *Nal II. Ltd. v. Tonkin*, 705 F.Supp. 522, 525–26 (D.Kan.1989).

Count X lacks the particularity required by Rule 9(b). As far as alleging the contents of the misrepresentation or the "what," ¶ 113 alleges: "TPA's statements reflecting to a promised strategic plan to deliver to plaintiff buyers for the I LIKE ME! Program was known to be false, or made with a reckless disregard as to whether it was true or false." (Dk.40). The language used in this allegation is too vague to put TPA on notice as to what statements are alleged to be misrepresentations. References like, "statements reflecting to" or "a promised strategic plan," are too general to satisfy Rule 9(b). Nor should the defendant be left to guess which of the over one hundred prior paragraphs of incorporated allegations specifically mention the misrepresentations at issue or to guess which of the many promises and representations found in the different documents referenced in those prior allegations are being challenged as misrepresentations.

For these reasons, the court finds the plaintiff's misrepresentation claim inadequate. The court further finds it possible, however, that plaintiff could plead facts

that might cure this deficiency in its complaint. Therefore, the court exercises the discretion provided it by Fed.R.Civ.P. 15(a) and grants plaintiff leave to amend count X on or before September 26, 2001, to conform to the pleading requirements imposed by Rule 9(b).

IT IS THEREFORE ORDERED that the defendant Donald F. DeMoulin's Motion to Dismiss Counts I, III, VI and IX of the Plaintiff's Second Amended Complaint, (Dk.41), is denied as to Counts I and III, granted as to Count VI, and denied as moot as to Count IX;

IT IS FURTHER ORDERED that the defendant Telephone Pioneers of America's Motion to Dismiss Counts I, III, and X of the Second Amended Complaint (Dk.61) is granted insofar as the plaintiff is given leave to amend Count IX on or before September 24, 2001, for the sole purpose of attempting to conform to the pleading requirements of Fed.R.Civ.P. 9(b) and the motion is denied in all other respects.

Dated this __ day of September, 2001, Topeka, Kansas.