**KINDERGARTNERS COUNT, INC., Plaintiff,**

v.

**Donald F. DEMOULIN, Defendant/Counterclaim Plaintiff,**

and

**Telephone Pioneers of America, and Pioneers Foundation, Defendants,**

v.

**Vernie L. Wheeler, Counterclaim Defendant.**

**Kindergartners Count, Inc., Plaintiff,**

v.

**Donald F. Demoulin, and Telephone Pioneers of America, Defendants**

**Nos. 00–4173–JAR, 01–4017–JAR.**

United States District Court, D. Kansas.

Feb. 12, 2003.

See also 171 F.Supp.2d 1183.

David R. Barnard, John M. McFarland, Lathrop & Gage, L.C., Kansas City, MO, Todd E. Hilton, Stueve Helder Siegel LLP, Kansas City, MO, for Donald F. Demoulin.

Terry E. Beck, Beck Law Office, LLC, Topeka, KS, Craig C. Blumreich, Brian G. Boos, Gehrt & Roberts, Chartered, Topeka, KS, for Vernie L. Wheeler.

J. Phillip Gragson, Kevin James Grauberger, Thomas E. Wright, Wright, Henson, Somers, Sebelius, Clark & Baler, LLP, Topeka, KS, Richard P. Steinken, Jenner & Block, Chicago, IL, for Pioneers Foundation.

J. Phillip Gragson, Kevin James Grauberger, Evelyn Z. Wilson, Thomas E. Wright, Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, Topeka, KS, Joseph F. Marinelli, Thomas K. McQueen, Molly J. Moran, Richard P. Steinken, Jenner & Block, Chicago, IL,

Anne M. Kindling, Nathan Daniel Leadstrom, Harold S. Youngentob, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Kindergartners Count, Inc.

### MEMORANDUM ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT DEMOULIN'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE EXPERT WITNESS

ROBINSON, District Judge.

This case comes before the court on the motions of defendant Donald DeMoulin ("DeMoulin") for summary judgment (Doc. 333) and to strike plaintiff's expert witness (Doc. 336). Plaintiff Kindergartners Count, Inc. ("KCI") has asserted claims of copyright infringement, 17 U.S.C. § 101 *et seq.*, and unfair competition under the Lanham Act, 15 U.S.C. § 1116. For the reasons set forth below, DeMoulin's motions are granted in part and denied in part.[1]

### I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, to-

---

1. This Order supercedes the Omnibus order entered December 16, 2002 (Doc. 434) to the extent the Court is partially granting DeMoulin's motion for summary judgment.

gether with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[2] The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[3] Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[4]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case.[5] Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial.[6] "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."[7] Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.[8] The court must consider the record in the light most favorable to the nonmoving party.[9]

The Court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[10]

## II.   Statement of Facts

The following facts are taken from the summary judgment record and are either stipulated, uncontroverted or viewed in the light most favorable to KCI's case. The Court ignores factual assertions that are immaterial, or not supported by affidavits and/or authenticated and admissible documents. The Court also disregards conclusory statements and statements that are conclusions of law rather than statements of fact.

In 1991–92, Vernie Wheeler ("Wheeler") purchased from Computer Business Services, Inc. ("CBSI") a telemarketing business package that contained approximately 20 different software programs. Wheeler either telemarketed various products or services directly, or would hire himself out to businesses to conduct telemarketing for them. Among the software programs was a desktop publishing program for a set of seven different personalized children's books, including one entitled "I Like Me," authored by Carol A. Stone and illustrated by Shirley Overbay (the "CBSI book"). Wheeler published and sold these personalized books. Wheeler would obtain from

---

2.   Fed.R.Civ.P. 56(c).

3.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

4.   *Id.* at 251–52, 106 S.Ct. 2505.

5.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

6.   *See Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

7.   *Id.*

8.   *See id.*

9.   *See Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

10.   *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

CBSI a "shrink-wrapped" copy of the personalized book in hard cover form, with the text pages blank. Wheeler would use the software program to print the prewritten text of each book on blank text pages, personalizing the book at various points where the software provided variable fields, using a child's name and the names of persons close to the child.

Over time, Wheeler modified the text of the CBSI book. In 1994, Wheeler incorporated Kindergartners Count, Inc. ("KCI"). He contracted to have new illustrations drawn and obtained copyright registration as derivative of the CBSI book pre-existing copyrighted work. The new book was also titled "I Like Me" ("ILM book"). Wheeler obtained CBSI's oral and written permission to create the ILM book.

Dr. Donald DeMoulin ("DeMoulin") was a professor of Education at the University of Tennessee–Martin in Jackson, Tennessee. On or about October 1, 1997, KCI and DeMoulin executed a written agreement, under which DeMoulin agreed to provide consulting services to KCI and to create a 12–week teacher's guide for use by classroom teachers in conjunction with the ILM book. KCI and DeMoulin en-

tered into a second consulting agreement on or about April 11, 1999. The 1999 agreement provided that all materials created for KCI under the previous agreement qualify as "work for hire."[11] The 1999 agreement gave KCI all rights and interests in matters "relating to any part of" KCI's program developed by DeMoulin. DeMoulin assigned to KCI his copyright of the ILM Teacher's Guide as work for hire.[12]

KCI holds three copyright registrations relative to this litigation:

- TX–5–187–773, to KCI on 3/7/00, issued for the ILM book, reflecting that the book was created in 1994 and first published on May 31, 1994;

- TX5–154–373, issued to KCI on 3/6/00 on "The supplemental teacher's guide to the 'I Like Me' program," reflecting that the book was created in 1998 and first published on May 31, 1998;

- TX–4–890–072, issued to DeMoulin on 10/21/98 on "I Like Me: teacher's guide," reflecting that the book was created in 1997 and first published on September 1, 1997.[13]

---

**11.** 17 U.S.C.A. § 101 provides:

A "work made for hire" is-

(1) a work prepared by an employee within the scope of his or her employment; or

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. For the purpose of the foregoing sentence, a "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other

work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes, and an "instructional text" is a literary, pictorial, or graphic work prepared for publication and with the purpose of use in systematic instructional activities.

**12.** 17 U.S.C. § 201(b) provides:

Works Made for Hire.—In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

**13.** This copyright was assigned to KCI.

KCI entered into a five year Partnership Agreement with Telephone Pioneers of America ("TPA") on January 28, 1998. The Partnership Agreement recognized KCI as the owner and copyright holder of the ILM book and ILM Teacher's Guide. TPA agreed, through its local chapters, to purchase and distribute KCI's ILM book and ILM Teacher's Guide to schools and to work jointly to promote the ILM program.

Sometime in November 1998, TPA solicited DeMoulin to submit a proposal for a personalized reader program. DeMoulin proposed a 12–page personalized reader entitled "A Book About Me" ("ABAM") that would include Dolch Sight words and words appropriate for kindergartners, as well as a teacher's guide and a parents' guide, and research to support the new program as well as publications, speaking engagements and the like. DeMoulin proposed a timetable to implement the ABAM program in the schools for the 2000–2001 school year. Wheeler was unaware of DeMoulin's proposal to TPA.

DeMoulin's proposal was presented at a TPA meeting on May 12, 1999. On May 13, 1999, TPA moved to dissolve the Partnership Agreement with KCI. DeMoulin resigned from KCI's Advisory Board shortly thereafter.

On July 21, 1999, DeMoulin signed a consulting agreement with TPA. A second agreement was executed in July 2000 under which DeMoulin wrote as work-for-hire the ABAM book and Curriculum Planner. On or about April 4, 2000, TPA published both ABAM books.

KCI brought this action against TPA and DeMoulin for copyright infringement and unfair competition.[14]

## III. Copyright Infringement Claim

■ In order to establish copyright infringement, a plaintiff must prove (a) ownership of a valid copyright, and (b) copying of constituent elements of the work in question which are original.[15]

### A. Ownership of valid copyright

■ Registration of a copyright is a prerequisite to the filing of an infringement action.[16] KCI holds three copyright registrations relative to this litigation: one issued for the ILM Book to KCI, and two for the ILM Teacher's Guide. A Certificate of Registration, if timely obtained, constitutes prima facie evidence of the validity of the copyright.[17] Because originality is a necessary condition to the validity of the copyright, it follows that a certificate of registration constitutes prima facie evidence of the author's originality.[18] Once the presumption is established, the burden shifts to the defendant to prove that plaintiff copied from a prior source and thus, was not original.[19]

DeMoulin contends that he is entitled to entry of a partial summary judgment find-

---

**14.** KCI also has pending claims against TPA and DeMoulin for breach of contract, breach of fiduciary duty and tortious interference with a contract; DeMoulin has brought a third party claim against Wheeler and TPA for defamation, which are not before the Court at this time.

**15.** *See Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

**16.** *See* 17 U.S.C. § 411(a) ("no action for infringement of the copyright of any work shall be instituted until registration of the copyright claim has been made").

**17.** 17 U.S.C. 410(c); *Autoskill Inc. v. National Educational Support Systems, Inc.,* 994 F.2d 1476, 1487 (10th Cir.1993), *cert. denied,* 510 U.S. 916, 114 S.Ct. 307, 126 L.Ed.2d 254 (1993).

**18.** 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.11[B][1] and [2] at p. 12–164–165 (2002) (hereinafter *Nimmer).*

**19.** *Id.*

ing that KCI's copyright registration is limited to the ILM Book and the ILM Teachers Guide, but not the preexisting CBSI book. KCI does not contend that it owns a copyright or license in the preexisting CBSI work. DeMoulin argues that because KCI has produced no evidence that it was authorized by the copyright owner of the CBSI book to copyright portions of the CBSI book as part of the KCI derivative work, KCI cannot claim ownership of the preexisting CBSI material, citing 17 U.S.C. § 204(a), which requires a writing as proof of transfer of copyright interest.[20]

The Copyright Act provides that:

The subject matter of copyright as specified by section 102 includes compilations and derivative works, but protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully. The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.[21]

■ DeMoulin is correct to the extent KCI's copyright registration is limited to the ILM Book and the ILM Teacher's Guide; and the Court grants partial summary judgment on that basis. Accordingly, copyright protection for the books extends only to original material as distinguished from pre-existing material in the CBSI book.[22]

■ DeMoulin also argues that KCI is attempting to assert a copyright interest in the "I Like Me Program," which is not subject to copyright protection.[23] KCI appears to concede this issue, stating that DeMoulin does not accurately reflect the use of the term "program" by KCI, which it uses as a matter of convenience, and is used in connection with the ILM Book and the ILM Teacher's Guide, respectively, in which copyright registrations are held. Accordingly, summary judgment is partially granted on this issue as well.

DeMoulin attempts to rebut the validity of the copyright in the ILM Teacher's Guide by arguing that since the ILM book is a derivative work of the CBSI book, and the ILM Teacher's Guide is derivative of

20. 17 U.S.C. § 204(a)("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."

21. 17 U.S.C. § 103(a) and (b).

22. DeMoulin alludes to the fact that KCI has failed to produce any evidence to establish that Wheeler or KCI was authorized to create and copyright the derivative work. KCI responds that Wheeler testified that he obtained permission to change the CBSI book both orally and in writing from CBSI. Section 204(a) is in the nature of the Statute of Frauds and "was intended to resolve disputes between owners and alleged transferee, and was not intended to operate for the benefit of a third-party infringer when there is no dispute between the owner and transferee." Thus, DeMoulin cannot use § 204 to contest the validity of KCI's derivative copyright in the ILM Book.

23. *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1371 (10th Cir.1997) ("Section 102(b) limits the scope of copyright protection by providing that '[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, [or] method of operation...' regardless of the form in which it is described, explained, illustrated, or embodied").

the ILM book, it is also a derivative work of the CBSI book. Because there is no evidence that KCI was authorized to copyright derivative works based on the CBSI book, DeMoulin argues, the ILM Teacher's Guide is not entitled to protection. KCI contends that the guide is not derivative of any pre-existing work.

■ A "derivative work" is defined as "a work based upon one or more preexisting works" to which original materials are newly added.[24] Examples include a translation, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted.[25] A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."[26] Thus, any work based in whole, or in substantial part, upon a pre-existing work, if it satisfies the requirements of originality and is not itself an infringing work, will be separately copyrightable.

■ The Court disagrees with DeMoulin's circular argument. The ILM Teacher's Guide copyright registration was filed as an original work. DeMoulin has the burden of showing that KCI copied from a prior source and thus was not original. It is not sufficient for DeMoulin to offer evidence of prior similar works in the absence of evidence that plaintiff copied from such works. DeMoulin fails to mention any elements of the ILM Teacher's Guide that infringe upon the protected elements of the CBSI book. Even if the Court were to find the ILM Teacher's Guide was derivative of the ILM book, it does not follow

that the copyright for the ILM Teacher's Guide is not valid. Rather, protection extends to those portions of the guide that are original, as discussed *infra*. To the extent the ILM Teacher's Guide is derivative of the ILM book, which is derivative of the CBSI book, copyright protection does not extend to any preexisting work in the CBSI book that appears in the ILM Teacher's Guide.

Accordingly, the Court finds that DeMoulin has failed to rebut the presumption of validity of KCI's copyrights in the ILM book and the ILM Teacher's Guide, and denies summary judgment on this basis. KCI's copyrights do not extend to the CBSI book, however, and are limited to original material as distinguished from pre-existing material in the CBSI book.[27]

### B. Copying

The second element of an infringement claim "requires [the court] to consider two distinct issues. First, [it] must determine whether, as a factual matter, the defendant copied plaintiff's work. Second, as a mixed question of law and fact, [it] must evaluate whether the elements copied by the defendant are protected by copyright."[28]

■ While the fact of copying is difficult to prove directly, KCI can indirectly prove copying by establishing that DeMoulin had 1) access to the copyrighted work, and 2) that there are probative similarities between the copyrighted material and the allegedly copied material.[29] Ultimately, to prove factual copying, the plaintiff must come forward with sufficient evidence that a reasonable factfinder, taking together

---

24. 17 U.S.C. § 101.

25. *Id.*

26. *Id.*

27. 17 U.S.C. § 103.

28. *Mitel, Inc. v. Iqtel, Inc.,* 124 F.3d at 1370 (footnote and internal citations omitted).

29. *Gates Rubber Co. v. Bando Chemical Industries, Ltd.,* 9 F.3d 823, 832 (10th Cir.1993) (citations omitted).

the evidence of access and the similarities between the programs, could find that the second work was copied from the first.[30] The defendant can come forward with evidence of independent creation to rebut the inference of copying created by the evidence of access and factual similarity.[31]

In examining the similarities between two works under the indirect method of proving copying, it is ordinarily important to compare the whole works.[32] The degree of similarity between works which is necessary to give rise to the inference that copying occurred varies from case to case.[33] A high degree of similarity may permit access to be inferred.[34] Where there is a strong proof of access, the necessary showing of factual similarity will be relatively lower.[35] Regardless of how conclusive proof of access may be, liability may not attach without some showing of similarity.[36]

DeMoulin does not contest the issue of actual copying in his summary judgment submissions. Instead, he contests whether there was "actionable" copying, as liability will only attach if DeMoulin copied elements protected by the statute.[37] However, the Court finds it self-evident that De-Moulin had access to both the ILM book and the ILM Teacher's Guide prior to creation of the ABAM books; in fact, De-Moulin is the author of the ILM Teacher's Guide, which he created to be used in conjunction with the ILM book. It follows

that no rational factfinder could accept any contention of independent creation by De-Moulin. Moreover, because the proof of access is so strong in this case, the showing of factual similarity is relatively lower. Upon comparing the books as a whole, there are clear similarities between the ILM books and the ABAM books in idea, format and choice of themes. Accordingly, the Court finds probative similarity sufficient to give rise to the inference that copying occurred.

Although the Court has found an inference of factual copying, liability will only attach if DeMoulin copied the elements protected by copyright. Therefore, this case turns on whether there is a substantial similarity between the protectable aspects of the ILM books and the ABAM books.

## C. Substantial Similarity.

■■■ The relevant inquiry is whether there exists a substantial similarity between those aspects of ILM and ABAM that are legally protectable. "This is primarily a qualitative rather than a purely quantitative analysis, and must be performed on a case-by-case basis." [38] To make such an inquiry, the Tenth Circuit has directed the court to employ the "abstraction-filtration-comparison" test.[39] This test is summarized as:

At the abstraction step, [the court] separate[s] the ideas (and basic utilitarian

30. *Id.*

31. *Id.* at 823 n. 8.

32. *Madrid v. Chronicle Books,* 209 F.Supp.2d 1227, 1238 (D.Wyo.2002) (citation omitted).

33. *Gates Rubber,* 9 F.3d at 833, fn. 9 (citation omitted).

34. *Id.*

35. *Id.*

36. *Id.*

37. *See id.; Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1284 (10th Cir.1996) ("[L]iability for copyright infringement will attach only where *protected* elements of a copyrighted work are copied.") (emphasis added).

38. *Gates Rubber,* 9 F.3d at 839 (citation and footnote omitted).

39. *See id.* at 1284–85 n. 5 (employing test in a non-computer software case).

functions), which are not protectable, from the particular expression of the work. Then [the court] filter[s] out the nonprotectable components of the product from the original expression. Finally, [the court] compare[s] the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar.[40]

The Tenth Circuit has made clear, however, that the abstraction-filtration test "excludes from protection expression that is in the public domain, otherwise unoriginal, or subject to the doctrines of merger and scenes a faire." [41]

The Court, for purposes of the instant motion for summary judgment, need not perform an extensive step-by-step analysis of the similarities and differences between the books and teaching guides.[42] Rather, "the appropriate test to be applied and the order in which its various components are to be applied ... may vary depending upon the claims involved, the procedural posture of the suit, and the nature of the [works] at issue." [43]

█ Because a particular work is copyrighted does not mean that every element of it is copyrightable.[44] At the "cornerstone" of the Copyright Act is that the work protected must be original.[45] Thus, copyright protection extends only to those components of a copyrighted work that are original to the creator.[46] To be original, the component must have been independently created by the author and possess at least some minimal degree of creativity.[47]

With these standards in mind, the Court will proceed with an analysis of the ILM book and the ILM Teacher's Guide to determine which components are protected. Only for those components the Court determines are protected will the Court then determine whether a reasonable fact-finder could find a substantial similarity between the ILM books and the ABAM books.

### 1. ILM Book

#### a. Abstraction

█ It is well settled that "no author may copyright facts or ideas." [48] Thus, the copyright of a work protects only "those aspects of the work-termed 'expression'-that display the stamp of the author's originality." [49] "[A] copyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original-for example ... facts, or materials in the public domain-as long as such use does not unfairly appropriate the author's original contributions." [50]

---

**40.** *Id.* at 1284–85.

**41.** *Mitel,* 124 F.3d at 1372.

**42.** *See id.* ("Not every case requires an extensive abstraction-filtration comparison analysis.")

**43.** *Gates Rubber,* 9 F.3d at 834 n. 12.

**44.** *See Feist,* 499 U.S. at 361, 111 S.Ct. 1282; *Vasquez v. Ybarra,* 150 F.Supp.2d 1157, 1166 (D.Kan.2001) (citation omitted).

**45.** *See id.* ( citing *Feist,* 499 U.S. at 345–46, 111 S.Ct. 1282 (stating that the originality requirement is constitutionally mandated)).

**46.** *See id.*

**47.** *See Feist,* 499 U.S. at 345, 111 S.Ct. 1282.

**48.** *Id.* at 357–58, 111 S.Ct. 1282; *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 942 (10th Cir.2002) (quoting *Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 547, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)).

**49.** *Id.*

**50.** *Id.* ( quotation marks and citations omitted).

As previously discussed, one of the fundamentals of copyright law is that a copyright does not protect an idea, but only the expression of the idea.[51]  In order to separate idea from expression, the Court utilizes the abstraction test, explained by Judge Learned Hand as follows:

> Upon any work, and especially upon a play, a great number of patterns of increasing generality will fit equally well, as more and more of the incident is left out.  The last may perhaps be no more than the most general statement of what the play is about, and at times might consist only of its title; but there is a point in this series of abstractions where they are no longer protected, since otherwise the playwright could prevent the use of his "ideas," to which, apart from their expression, his property is never extended.[52]

Here, the ILM book is a personalized computer-generated children's book designed to enhance a child's self-esteem.  More specifically, this is accomplished by incorporating personal information about a child throughout the book, using various themes such as sharing, learning, helping and practicing.  This is an idea not entitled to protection.

However, the *manner* in which KCI utilizes this idea and communicates them to children amounts to expression.  Such expression can extend to the selection, arrangement, organization, structure and sequence if they are original.[53]  Further, an expression does not have to be novel or new to be copyrightable, it merely has to be original to the author, requiring only a quantum of creativity to be protected.[54]

### b.  Filtration

Under the second step of its analysis, the court considers whether any of the expression of the ILM book should be excluded from copyright protection under traditional copyright doctrines.[55]  By removing unprotected expression from the analysis, the filtration step "serves 'the purpose of defining the scope of plaintiff's copyright." '[56]

### 1) Derivative work

DeMoulin argues that, because the ILM book is a derivative of the CBSI book, the portions of the CBSI book incorporated into the ILM book must be filtered out before any comparison of the protectable elements of the corresponding works can be made.  The Court has previously ruled that KCI has produced no evidence that it was authorized by the copyright owner of the CBSI book to copyright portions of the book as part of the copyrighted KCI derivative work.  Pursuant to Copyright Law, protection for derivative work only extends to material contributed by the author and not preexisting material.[57]  DeMoulin sets out phrases allegedly copied by Wheeler from the CBSI book in Table I of his brief.

51.  *Autoskill,* 994 F.2d at 1491 (citations omitted).

52.  *Nichols v. Universal Pictures Corporation,* 45 F.2d 119, 121 (2d Cir.1930), *cert. denied,* 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931).

53.  *See Feist,* 499 U.S. at 345, 111 S.Ct. 1282.

54.  *Id.;*  (1 *Nimmer* § 2.01[A] at p. 2–7 to 2–12).

55.  *See Gates Rubber,* 9 F.3d at 836;  *Computer Associates Intern., Inc. v. Altai,* 982 F.2d 693, 707 (2nd Cir.1992).

56.  *Altai,* 982 F.2d at 707 (citations omitted).

57.  *See* 17 U.S.C. § 103(b) (copyright in derivative work extends only to material contributed by the author and not to preexisting material).

Table II of DeMoulin's brief consists of elements DeMoulin contends Wheeler derived from other sources. Once these elements are filtered from the ILM book, DeMoulin argues, there is no protectable material left.

KCI does little to dispute that elements set forth in Table I were incorporated from the CBSI book into the ILM book and are not protectable portions of the derivative work. Accordingly, the Court will filter out the following phrases from the ILM book as set forth in Table I:

"I like me." Title and p. 3, 5

"I like my name, [child's name inserted here]." p. 5

"I like my friends, [names of child's friends]." They say, "[child's name], you are a very special person and we like you, too." p. 6

"I like to reach up high, and try to touch the sky." p. 13

"[child's friends' names] and I think it can be fun to count to ten.... My friends, [insert child's friends' names] and I like to count and read together." pp. 17–18

"I like to go to school at [insert child's school name] in [insert school's location] .... I like school." p. 21

"I like to try to read all by myself." p. 25

"I like puppies and kittens, monkeys and bunnies, horses and goats and ducks that float." p. 33

"After reading this book it is easy to see why I can say, 'I LIKE ME!'" p. 37

"This book was given to me when I was in (Grade or Class)." It was a gift from:(Sponsor 1) p. 2 "Compliments of: [insert name of giver]." p. 36

DeMoulin also sets forth elements in Table II that he claims are not original, but derived from other sources. KCI counters that Table II misrepresents the testimony of Wheeler, who testified that he received inspiration from several sources as identified in Table II, but not that he illegally copied the material as suggested by DeMoulin. The Court finds the only element from the ILM book set out in Table II to be so unoriginal as to be unprotected is "I think I can, I think I can" as set out at p. 34. The remaining elements in Table II, while not novel or new, are original to Wheeler and thus protected.

### 2) Merger and Scenes a faire

■ Under the merger doctrine, "copyrightable expression is denied protection from infringement" because the expression "is inseparable from or merged with ideas, processes, or discoveries underlying the expression."[58] The merger doctrine operates to bar a party from obtaining a monopoly on the use of an idea or concept by copyrighting the only practical means of expression of that idea.[59]

■ Under the *scenes a faire* doctrine, "expressive elements are not entitled to copyright protection" if they are "standard, stock, or common to a particular topic, or necessarily follow from a common theme or setting."[60] The following example is often used to illustrate the doctrine: "two scenarios wish to treat the unprotected idea of police life in the South Bronx, for each it will be only natural to depict drunks, prostitutes, vermin and derelict cars, juxtaposed against hard drinking Irish cops chasing fleeing criminals."[61]

---

**58.** *Gates Rubber,* 9 F.3d at 838 (citation omitted).

**59.** *Id.*

**60.** *Id.* at 823.

**61.** *See* 4 *Nimmer* § 13.03[B][4].

*Merger*

DeMoulin argues that there essentially is only one way to express the idea, "This is a special book written about me," particularly if one is limited to words and phrases that can be understood by a kindergartner. Further, DeMoulin argues, because the books are written for kindergartners, the sentences employed are necessarily short and simple, framed in a very limited range of words and phraseology to correspond with the very limited life experience, socialization, reading ability and vocabulary of kindergartners.

On their face, the simple words and phrases in the ILM book, taken individually, seem to be of the type embraced by the merger doctrine. But it must be considered that these themes and phrases are part of a format whose ostensible purpose is to "help children master reading while learning various life lessons." The purpose of the format might be served by any number of words and phrases, regardless of their content. Thus, Wheeler's expression and selection of certain words and phrases are protected by copyright, even though the phrases and themes themselves might be covered by the merger doctrine. To cite an example used by the Eleventh Circuit, there may be only one way to express the idea of a particular color or number of fish-but when those ideas are arranged in a particular order-such as "one fish, two fish, red fish, blue fish"-the expression is no longer covered by the merger doctrine.[62]

*Scenes a faire*

DeMoulin argues that once the non-protectable elements are filtered out, the only ideas remaining in ILM that are reflected in ABAM are *scenes a faire*, as they are basic, common instructional themes for any young child. As identified by DeMoulin and KCI, Wheeler included the following themes in the ILM book which were not included in the original CBSI book:

- personal discovery
- eating good [sic] and growing up strong
- sharing, caring and taking turns
- being responsible and making good choices
- practicing
- listening
- self-improvement
- being helpful and kind
- following rules and making good decisions
- police and firefighters being friends and calling 9-1-1 in emergencies
- putting away toys, being helpful at home and being nice
- self-motivation

DeMoulin contends that if you start with the unprotected concept of utilizing a personalized reader to teach kindergartners basic life lessons, self-esteem and self-respect, all of these elements flow "naturally and necessarily" from the premise of the CBSI book and others like it. These "expressive elements," DeMoulin argues, are basic, common instructional themes for any young child, and thus non-protectable. DeMoulin argues that the ILM book contains no original creativity, as it consists of basic, personalized facts about the child that are generic to all children, and positive messages that are common to teaching kindergarten children.

As discussed above, to be original, the component must have been independently created by the author and *possess at least some minimal degree of creativity.*[63] The

---

**62.** *Palmer v. Braun,* 287 F.3d 1325, 1334 n. 3 (11th Cir.2002).

**63.** *See Feist,* 499 U.S. at 345, 111 S.Ct. 1282 (emphasis added).

Court is mindful, however, that the Supreme Court has made the threshold for creativity very low. As the Court explained in *Feist*:

> To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily as they possess some creative spark, no matter how crude, humble or obvious it might be .... [64]

In accordance with the Supreme Court's pronouncement, the Court finds that a triable issue remains to the protectable interest in those elements of the ILM book which may have a slight "creative spark." Even if the ideas and themes of the ILM book are not protected, it appears their overall selection and arrangement could fall under the protection of the copyright act.[65]

In *Feist*, a public telephone service provider brought a copyright claim against a private publisher of telephone directories.[66] The plaintiff claimed that after it refused a license to the defendant to reprint its white page listing, the defendant still did so, resulting in 1,309 of defendant's listings to be identical to the plaintiff's listings.[67] The defendant argued that the individual listings were "facts" and, as such, not copyrightable.[68] The Court restated two established copyright law propositions: "The first is that facts are not copyrightable; the other, that compilations of facts generally are." [69] However, although the selection or arrangement of facts may be granted copyright protection, the Court made clear that originality is a constitutionally mandated prerequisite for such protection.[70] Thus, to be a protectable element of the copyrighted work, the compilation must have been the result of a "modicum of intellectual labor" to satisfy the creativity requirement.[71]

Thus, the question to be asked in this case is whether the selection and arrangement of the personalized facts, ideas and themes by KCI required the requisite level of creativity. Was the selection and arrangement the result of intellectual production, thought and conception? For purposes of summary judgment, the Court must assume KCI used a modicum of creativity. The issue of whether creativity was used is one to be left for trial.

### c. Comparison-is there substantial similarity?

To decide whether two works are substantially similar, the court asks "'whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." ' [72]

> [T]he measure of how substantial a "substantial similarity" must be may vary according to circumstances. For many copyrights represent significant creative effort, and are therefore reasonably robust, whereas others reflect only scant creativity; the Supreme Court labels the latter "thin." It would seem to follow analytically that more similarity is

---

64. *Id.* (internal quotation omitted).

65. *Vasquez v. Ybarra*, 150 F.Supp.2d at 1170–71.

66. 499 U.S. at 343–44, 111 S.Ct. 1282.

67. *See id.*

68. *See id.* at 344, 111 S.Ct. 1282.

69. *Id.*

70. *See id.* at 351, 111 S.Ct. 1282.

71. *Id.* at 347, 111 S.Ct. 1282 (quoting *Nimmer* § 108[C][1] ).

72. *Jacobsen v. Deseret Book Company*, 287 F.3d at 943 (quoting *Country Kids 'N City Slicks*, 77 F.3d at 1288) (quotation omitted).

required when less protectable matter is at issue. Thus, if substantial similarity is the normal measure required to demonstrate infringement, "supersubstantial" similarity must pertain when dealing with "thin" works.[73]

Because "[n]o easy rule of thumb can be stated as to the quantum of fragmented literal similarity permitted without crossing the line of substantial similarity," whether works are substantially similar is "a classic jury question." [74]

The Tenth Circuit recently rejected applying a supersubstantial similarity test to all fact-based works.[75] Rather, the court reaffirmed that "the measure of how substantial a 'substantial similarity' must be may vary according to circumstances." [76] "Merely applying a supersubstantial similarity test to all fact-based works would ignore the differences between 'sparsely embellished maps and directories' and 'elegantly written biography.'" [77]

This begs the question of how to classify the ILM book vis-a-vis the level of protection it should receive. At a hearing on this motion for summary judgment, the Court asked counsel if it considered the ILM book fiction or non-fiction. Counsel had no definitive answer, but counsel for De-Moulin suggested that, as a book for children, with limited creativity, the ILM book should be subject to a heightened level of substantial similarity. The Court finds that the ILM book is a hybrid of fiction and non-fiction—it incorporates numerous personalized facts about a child into real-life situations involving kindergartners, told in a storybook scenario-a factual basis set in a fictional scenario. In short, the ILM book involves more creative effort and original expression than a telephone directory, but less than a purely fictional work. Accordingly, the Court declines to apply the supersubstantial similarity test, and instead applies the traditional substantial similarity test.

■ Summary judgment may be granted if the court finds no reasonable fact-finder would find a "substantial similarity" between the selection and arrangement of personalized facts and themes between the two books. According to the Tenth Circuit:

> The traditional test for substantial similarity is "whether the accused work is so similar to plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." The essence of this test is whether the "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." The touchstone of the analysis is the "overall similarities rather than the minute differences between the two works."

KCI contends that nearly all of the themes selected by Wheeler were copied by DeMoulin into the ABAM book. Further, KCI alleges that the ABAM book is "nearly identical" to the ILM book in overall appearance, organization and selection of themes, thus presenting a fact question for the jury.

After comparing the protectable elements of the ILM book and the ABAM book, the Court finds that a reasonable

---

**73.** 4 *Nimmer* § 13.03[A], at 13–28 (2000).

**74.** *Jacobsen v. Deseret Book Company*, 287 F.3d at 943 (quoting *Nimmer*, § 13.03[A][2], at 13–46 and n. 96 (2001)).

**75.** *Id.* at 944.

**76.** *Id.* (quoting 4 *Nimmer* § 13.03[A]).

**77.** *Id.* (quoting *Harper & Row*, 471 U.S. at 563, 105 S.Ct. 2218 (1985)).

jury, properly instructed, could find that DeMoulin's overall selection and arrangement of personal facts, ideas and themes in the ABAM book are substantially similar to the ILM book. Summary judgment on this basis is denied.

## 2. ILM Teacher's Guide

The Court incorporates its analysis of the ILM book, set forth above, to the extent it applies to the ILM Teacher's Guide.

### a. Abstraction

 The ILM Teacher's Guide is a teaching guide designed to be used in conjunction with the ILM book, using various teaching methods, techniques and activities designed to enhance a child's self-esteem. As with the ILM book, this is an idea not entitled to protection. Teaching techniques and methods in themselves are also not entitled to protection. However, the manner in which KCI expresses these ideas and methods, including structure, format, and selection and arrangement of themes, is protectable expression if it is original.[78]

### b. Filtration

#### 1) Derivative work

Assuming for this motion only that the ILM Teacher's Guide is derivative of the ILM book, the Court applies the previous analysis regarding the CBSI book to the ILM Teacher's Guide: the non-protected elements in the CBSI book set forth previously in this opinion should also be filtered out of the ILM Teacher's Guide. DeMoulin does not point to any such elements, however, nor does the Court find any upon independent review of the ILM Teacher's Guide and the CBSI book.

#### 2) Merger and Scenes a Faire

DeMoulin argues that the ILM Teacher's Guide contains no original expression, but rather "garden variety" teaching techniques and generic themes commonly found in kindergarten classrooms, and as such, are not protectable. These techniques include activities and lessons used in conjunction with the themes identified in the ILM book, *supra*. As with the ILM book, the Court finds that for purposes of summary judgment, it must assume that KCI used a modicum of creativity in the selection and arrangement of the ideas, themes and techniques.

### c. Comparison-is there substantial similarity?

As a threshold matter, the Court finds that the ILM Teacher's Guide is a work of non-fiction. As a teaching guide, however, it involves more creative effort and original expression than a purely fact-based work. As with the ILM book, the Court applies the traditional substantial similarity standard.

 The Court notes that, unlike the ILM book, DeMoulin was the author of both the ILM Teacher's Guide and the ABAM Curriculum Planner. When comparing the two books, the themes are virtually identical, which is not surprising since DeMoulin wrote both books. But DeMoulin appears to have made intentional changes to the expression in the ABAM Curriculum Guide. A defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's.[79] The question is, were DeMoulin's changes sufficient to avoid a finding of substantial similarity?

---

**78.** *See Feist,* 499 U.S. at 345, 111 S.Ct. 1282.

**79.** *3 Nimmer* § 13.03[B] at 13–37.

KCI contends that, in addition to extensive paraphrasing, nearly all of the themes in the ILM Teacher's Guide were copied by DeMoulin into the ABAM Curriculum Guide. Further, KCI alleges that the ABAM Curriculum Planner "copies over" the ILM Teacher's Guide in structure and format, organization and selection of themes, and their placement in the book, thus presenting a fact question for the jury.

■ After comparing the protectable elements of the ILM Teacher's Guide and the ABAM Curriculum Planner, the Court finds that a reasonable jury, properly instructed, could find that DeMoulin's overall selection and arrangement of personal facts, ideas and themes in the ABAM Curriculum Planner are substantially similar to the ILM Teacher's Guide. Summary judgment on this basis is denied.

## IV. Motion to strike KCI expert witness

■ KCI intends to offer as an expert Dr. Judith McConnell, a professor in early childhood education, in support of its copyright infringement claim. DeMoulin moves to strike plaintiff's expert on three grounds: 1) because ILM and ABAM are both short, simple children's books, and expert opinion on whether they are similar is unnecessary and usurps the role of the jury; 2) even if the books were sufficiently complex that expert testimony would help

the jury, McConnell has no special expertise in comparing books for similarity; and 3) McConnell has provided no training, credentials, methodology or survey of any sort to support her opinion that the books will cause consumer confusion.[80]

KCI responds that DeMoulin is correct that courts generally do not allow expert testimony on the issue of whether there was unlawful copying, that is, whether protected elements of plaintiff's work were substantially similar.[81] KCI contends, however, that expert opinions are admissible to show factual copying, and that it asked Dr. McConnell to offer her opinion on this limited issue.[82]

As discussed above, the Court has found an inference of factual copying based on the undisputed fact of DeMoulin's access to the ILM books and the probative degree of similarity between the works as a whole. Accordingly, Dr. McConnell's testimony on this issue is irrelevant.

Moreover, the Court finds that expert testimony in this case is inappropriate. Fed.R.Evid. R. 702 states that expert opinions are admissible whenever such testimony will "assist the trier of fact to understand the evidence or determine a fact in issue ...."[83] The Tenth Circuit has permitted expert testimony on actual copying in copyright cases involving computer programs, reasoning that such testimony is needed due to the technicality, complexity

80. DeMoulin also moves to strike McConnell's testimony on grounds unrelated to the pending motion, including testimony regarding plagiarism, consumer confusion and the "related to" provision in the parties' contract. The Court does not rule on those aspects of the motion at this time.

81. As discussed above, in evaluating the substantial similarity of an alleged infringing work, the Tenth Circuit applies the ordinary person test. "[T]he test is whether the accused work is sufficiently similar that an ordinary observer would conclude that the defen-

dant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *See Country Kids 'N City Slicks,* 77 F.3d at 1280.

82. The Court notes that, despite assertions to the contrary, KCI utilized Dr. McConnell's report in its summary judgment response on the issue of substantial similarity of protected elements (KCI brief, pp. 49–52). Consistent with this ruling, the Court did not rely on Dr. McConnell's report in its analysis.

83. Fed.R.Evid. 702.

**1232**

and unfamiliarity of such programs to most lay observers.[84] KCI does not cite, nor could the Court find, any cases in which the Circuit approved the use of such evidence outside this highly specialized context to relatively simple works of literature. Unlike technical computer programs, the trier of fact does not need an expert to compare two literary works that are expressed in simple English. Dr. McConnell's expert opinion will not change what each work is on its face.

Further, having an expert testify regarding actual copying is likely to create unnecessary confusion. The trier of fact would be exposed to expert evidence regarding "substantial similarity" of the works as a whole to determine actual copying, yet would be expected to analyze whether the copying was unlawful under the ordinary observer test.

Accordingly, DeMoulin's motion to strike Dr. McConnell is granted in part. The opinions of KCI's expert witness are not admissible on the issue of actual copying or substantial similarity.

## V. Unfair competition (KCI count III)

Judge Crow previously ruled in this case that KCI's count III Unfair Competition claim against Telephone Pioneers and DeMoulin, which essentially alleged unfair competition by commission of acts constituting copyright infringement, avoided dismissal through preemptive effect of the copyright laws only because KCI had pled an "extra element" not subsumed within the standard infringement claim.[85] The court described the "extra element" pled by KCI as asserting that either (a) the infringement and resulting unfair competition by DeMoulin was accomplished through a breach of fiduciary/confidential relationship and/or (b) the infringement of DeMoulin caused "confusion, mistake and deception" in the nature of "palming off." [86]

At the hearing held December 5, 2002, this Court denied DeMoulin's motion for summary judgment on the unfair competition claim because jury questions remained on both the copyright claim and the so-called extra elements. Subsequent to that hearing, the parties have requested the Court to determine, as a threshold legal issue, whether the essential elements of the unfair competition claim require KCI to prove each and every element of copyright infringement under Count I in addition to the additional elements. In other words, can KCI prevail on the claim of unfair competition without establishing its claim for copyright infringement?

Based on Judge Crow's previous ruling, this Court holds that, in order to prevail on its unfair competition claim, KCI must initially prove copyright infringement, then prove an "extra element" of either 1) breach of a fiduciary and confidential duty, or 2) confusion in the nature of "palming off."

**IT IS THEREFORE ORDERED BY THE COURT** that defendant DeMoulin's Motion for Summary Judgment (Doc. 333) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that DeMoulin's Motion to Strike plaintiff's expert witness (Doc. 336) is granted in part.

IT IS SO ORDERED.

---

84. *See, e.g., Gates Rubber,* 9 F.3d at 832.

85. 171 F.Supp.2d 1183, 1190–92 (D.Kan. 2001).

86. *Id.*